# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs July 27, 2010

## STATE OF TENNESSEE v. GUY HENRY WHITE

### Appeal from the Circuit Court for Blount County
### No. C-18028      David R. Duggan, Judge

---

### No. E2010-00139-CCA-R3-CD - Filed August 9, 2010

---

The defendant, Guy Henry White, entered into an open guilty plea to one count of theft of property valued at $10,000 or more but less than $60,000. *See* T.C.A. § 40-3-103 (2006). The trial court sentenced him to five years to be served as 90 days' incarceration with the remainder on supervised probation. The defendant appeals from the trial court's denial of judicial diversion and its imposition of a five-year sentence. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

J. Liddell Kirk, Knoxville, Tennessee (on appeal); and Mack Garner, District Public Defender (at trial), for the appellant, Guy Henry White.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Mike Flynn, District Attorney General; and Tammy Harrington, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was charged by information with one count of theft for stealing assorted merchandise and cash with a combined value of more than $10,000 from Walmart between November 1, 2008, and December 11, 2008. On October 5, 2009, the defendant entered an open plea with the court to determine the length and manner of service of the sentence and restitution.

At the plea hearing, the assistant district attorney general stated that the

defendant, between the dates of November 5, 2008, and December 4, 2008, while employed as a cashier, stole property from Walmart "by allowing individuals who were going through the checkout line to take property without registering it and without paying for it." The prosecutor said, "Let's just say there are dozens of transactions during these dates" amounting to more than $10,000.

At the sentencing hearing, Paul Thompson of Walmart's security staff testified that he investigated the defendant, an employee of Walmart, for suspicion of theft. He said that the defendant had worked at Walmart for approximately one month and that his investigation showed that the defendant "either took money from the cash register on bogus refunds on car batteries or gave merchandise to customers that went through the register area without paying for that merchandise on a least 31 different times." He testified that the defendant allowed several people to only pay $10 to $15 for merchandise purchases valued at $500 to $700. Mr. Thompson recalled that the defendant allowed a man to walk out with a "muzzle loader" gun valued at $223.

Mr. Thompson testified that "Walmart feels that [the defendant's actions were] a real violation of integrity." He testified that he opposed judicial diversion and requested the maximum punishment. He said that Walmart requested $10,069 in restitution.

The presentence investigation report revealed that the defendant had no prior convictions and recommended no enhancement factors or mitigating factors.

The defendant testified that he was 49 years old, divorced, and had two adult children. He lived with his sister in Rockford, Tennessee. He testified that he worked at the Tennessee Farmer's Co-op from the ages of 18 to 34 and that when he left this employment, he was a superintendent of a feed mill. He said, "I had a worker's comp injury and I just never did get over it. And . . . they let me go . . . ." The defendant said that he also had worked at Walmart as a cashier in the automotive department. He testified that, after being fired from Walmart, he worked for a marble company as an installer and supervisor "on and off." He also supported himself by working as a gatekeeper at University of Tennessee football games.

The defendant testified that he developed an addiction to the medications that had been prescribed to him after he permanently injured his back at the co-op. He testfied, "They had me on 40 milligrams Opanas, which is oxymorphone, or something, and 10 milligrams of Opanas, and three Klonopins a day." He testified that he did not realize he was addicted to these drugs until his doctor stopped providing them after he lost his job at Walmart. He maintained that he never illegally obtained the drugs, but he said he "might occasionally have took more . . . than [he] should have on certain days." He explained that

he then entered a pain management program that monitors his intake of the pills.

The defendant said, "I lost my job, I lost my mother, and I lost my wife all in about a year and a half's time, and I just kind of went into a deep depression." He testified that "drugs had a big part in [his] doing it." The defendant said that he did not remember committing many of the thefts and that "it's like a dream to [him]."

The defendant testified that he first undercharged for merchandise from Walmart "to help a young girl that come through that was crying . . . about what she was going to get her little boy for Christmas and stuff." He said that he felt guilty about allowing her to take from Walmart; however, he explained that he continued to let people that he knew "not socially but on a first-name basis" take items from Walmart under his watch. He maintained that the man who took the gun was not one of his acquaintances. The defendant took money from the register in order to pay his son's medical bills because he had Type-I diabetes and had lost his TennCare coverage.

The defendant maintained that he was involved in the community and that he "was an upstanding citizen for . . . years. And then all of a sudden for a month or so . . . [he] [didn't] know what happened to [him]." He testified that he would comply with all conditions of probation and continue with his pain management program.

On cross-examination, the defendant testified that the first time he stole from Walmart, a lady he knew was checking out and he simply did not ring up several items at the register. He admitted that she planned to buy everything and did not ask him to steal the items for her. He guessed that the lady then told her friends because approximately a dozen other people came to him asking him to not scan the items. The defendant stated that he continued to take pain medication but that he currently only took oxycodone, which was "nowhere near as strong as the Opanas."

The trial court enhanced the defendant's sentence because he abused a position of trust in a manner that significantly facilitated the commission of the offense. *See* T.C.A. § 40-35-114(14) (2006). As a mitigating factor, the court found that the criminal conduct neither caused nor threatened serious bodily injury. *See id.* § 40-35-113(1). The trial court noted that the defendant should be considered a favorable candidate for alternative sentencing; however, the court found that the State had rebutted his favorable status condition with Mr. Thompson's testimony about Walmart's view that the defendant violated the company's trust and the fact that the defendant stole on more than 30 occasions in a month. The trial court then considered the defendant's positive social history and his poor physical condition. It could not determine the defendant's amenability to rehabilitation, but it found no reason to believe the defendant would not comply with the terms of his probation.

The court found that incarceration was not needed to protect society from future criminal conduct of the defendant. The trial court noted that an incarcerative sentence, however, was necessary to avoid depreciating the seriousness of the offense and sentenced the defendant to 90 days' incarceration with the remainder of the five-year sentence to be served on probation. The court ordered $10,069.96 in restitution to Walmart.

The trial court denied judicial diversion citing the defendant's violation of a position of trust and the value of the merchandise stolen. The trial court found that diversion in the immediate case would not serve the interests of the public.

On appeal, the defendant argues that the trial court erred in denying his request for judicial diversion. He also avers that the trial court erred in enhancing the length of his sentence to five years.

The defendant specifically alleges that the trial court erred in denying judicial diversion by "seem[ing] uncertain as to the [d]efendant's amenability to correction" when "there was no reason in the record to doubt the [d]efendant's amenability to correction." "Judicial diversion" is a reference to the provision in Tennessee Code Annotated section 40-35-313(a) for a trial court's deferring proceedings in a criminal case. *See* T.C.A. § 40-35-313(a)(1)(A). Pursuant to such a deferral, the trial court places the defendant on probation "without entering a judgment of guilty." *Id.* To be eligible or "qualified" for judicial diversion, the defendant must plead guilty to, or be found guilty of, an offense that is not "a sexual offense or a Class A or Class B felony," and the defendant must not have previously been convicted of a felony or a Class A misdemeanor. *Id.* § 40-35-313(a)(1)(B)(i)(b), (c). Diversion requires the consent of the qualified defendant. *Id.* § 40-35-313(a)(1)(A).

Eligibility, however, does not automatically translate into entitlement to judicial diversion. *See State v. Bonestel*, 871 S.W.2d 163, 168 (Tenn. Crim. App. 1993), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1, 9 (Tenn. 2000). The statute states that a trial court may grant judicial diversion in appropriate cases. *See* T.C.A. § 40-35-313(a)(1)(A) (court "may defer further proceedings"). Thus, whether an accused should be granted judicial diversion is a question entrusted to the sound discretion of the trial court. *Bonestel*, 871 S.W.2d at 168.

"Tennessee courts have recognized the similarities between judicial diversion and pretrial diversion and, thus, have drawn heavily from the case law governing pretrial diversion to analyze cases involving judicial diversion." *State v. Cutshaw*, 967 S.W.2d 332, 343 (Tenn. Crim. App. 1997). Accordingly, the relevant factors related to pretrial diversion also apply in the judicial diversion context. They are:

[T]he defendant's criminal record, social history, mental and physical condition, attitude, behavior since arrest, emotional stability, current drug usage, past employment, home environment, marital stability, family responsibility, general reputation and amenability to correction, as well as the circumstances of the offense, the deterrent effect of punishment upon other criminal activity, and the likelihood that [judicial] diversion will serve the ends of justice and best interests of both the public and the defendant.

*Id.* at 343-44; *see also State v. Washington*, 866 S.W.2d 950, 951 (Tenn. 1993). Moreover, the record must reflect that the trial court has weighed all of the factors in reaching its determination. *Bonestel*, 871 S.W.2d at 168. The trial court must explain on the record why the defendant does not qualify under its analysis, and if the court has based its determination on only some of the factors, it must explain why these factors outweigh the others. *Id.*

On appeal, this court must determine whether the trial court abused its discretion in failing to grant judicial diversion. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168. Accordingly, when a defendant challenges the denial of judicial diversion, we may not revisit the issue if the record contains any substantial evidence supporting the trial court's decision. *Cutshaw*, 967 S.W.2d at 344; *Bonestel*, 871 S.W.2d at 168.

Our review of the record shows that the trial court considered all appropriate factors in denying judicial diversion. The trial court determined that the circumstances of the offense, the uncertainty of the defendant's amenability to correction, and the interest of the public weighed against the granting of diversion. The record showed that the defendant, who was entrusted with operating the cash register at Walmart, violated that trust to deprive Walmart of more than $10,000 of cash and merchandise. The State argued that the evidence showed that the defendant, who had no criminal history, was susceptible to influence of others to commit the thefts as evidenced by multiple occasions on which he gave away merchandise at a customer's suggestion. The trial court acted within its discretion in relying upon these factors in denying diversion, and we will not disturb its holding.

As for the length of the defendant's sentence, the defendant argues that the "trial court erred in imposing a term of five years within the range of three to six years." When considering challenges to the length of a sentence this court conducts a de novo review with a presumption that the determinations of the trial court are correct. T.C.A. § 40-35-401(d). This presumption, however, "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party,

in this case the defendant, bears the burden of establishing impropriety in the sentence. T.C.A. § 40-35-401, Sentencing Comm'n Comments; *see also Ashby*, 823 S.W.2d at 169. If our review of the sentence establishes that the trial court gave "due consideration and proper weight to the factors and principles which are relevant to sentencing under the Act, and that the trial court's findings of fact . . . are adequately supported in the record, then we may not disturb the sentence even if we would have preferred a different result." *State v. Fletcher*, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). In the event the record fails to demonstrate the required consideration by the trial court, appellate review of the sentence is purely de novo. *Ashby*, 823 S.W.2d at 169.

> In making its sentencing decision, the trial court must consider:
>
> (1) The evidence, if any, received at the trial and the sentencing hearing;
>
> (2) The presentence report;
>
> (3) The principles of sentencing and arguments as to sentencing alternatives;
>
> (4) The nature and characteristics of the criminal conduct involved;
>
> (5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;
>
> (6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and
>
> (7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b). The trial court should also consider "[t]he potential or lack of potential for the rehabilitation or treatment of the defendant . . . in determining the sentence alternative or length of a term to be imposed." *Id*. § 40-35-103(5).

In the instant case, the trial court considered all relevant factors in determining the five-year sentence. The court found as an enhancement factor that the defendant violated

a position of trust.  *See* T.C.A. § 40-35-114(14).  We will not re-weigh the trial court's consideration of this factor, and we will not disturb the sentence.

In light of the foregoing analysis, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE